Jerry L. Steering (SBN 122509)
Law Offices of Jerry Steering
4063 Birch Street, Suite 100
Newport Beach, California 92660
(949) 474-1849
(949) 474-1883 Fax
jerrysteering@yahoo.com

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PITT,<br><br>    Plaintiff,<br><br>    vs.<br><br>COUNTY OF SAN DIEGO, DAVID R. SMITH, TROY J. DORAN, GEORGE CALDERON and DOES 1 THROUGH 10, INCLUSIVE,<br><br>    Defendants | Case No.:  **'16CV0515 CAB NLS**<br><br>COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983) CLAIM FOR UNREASONABLE SEIZURE OF PERSON (U.S. CONST. AMEND 4); CLAIM FOR UNREASONABLE / EXCESSIVE FORCE (U.S. CONST. AMEND 4); CLAIM FOR UNREASONABLE SEIZURE OF PROPERTY (U.S. CONST. AMEND 4); VIOLATION OF FIRST AMENDMENT RIGHTS [RIGHT TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCES / FREEDOM OF SPEECH] (U.S. CONST. AMEND 1); CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED ON FAILURE TO TRAIN (U.S. CONST. AMENDS 1 & 4); CLAIM AGAINST LOCAL GOVERNING BODY DEFENDANTS BASED ON |

OFFICIAL POLICY, PRACTICE, OR CUSTOM (U.S. CONST. AMENDS 1 & 4); CALIFORNIA STATE LAW CLAIMS FOR VIOLATION OF CAL. CIV. CODE SECTION 52.1; FALSE ARREST / FALSE IMPRISONMENT, BATTERY, ASSAULT, CONVERSION AND TRESPASS TO CHATTELS

**COMES NOW** plaintiff ROBERT PITT and shows this honorable court the following:

## <u>JURISDICTIONAL ALLEGATIONS</u>

1.     As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.     As the incidents complained of in this action occurred in the City of Santee, County of San Diego, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

3.     As the plaintiff's claims under California state law arise out of a common nucleus of operative fact and out of the same transactions and occurrences at plaintiffs' claims under federal law, this Court has jurisdiction over the plaintiffs' state law claims under 28 U.S.C. § 1367 and otherwise pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).  Moreover, this action is commenced less than six months after the denial of plaintiff's California

COMPLAINT FOR DAMAGES

Tort Claim for damages, that were timely filed with defendant County of San Diego.

## **GENERAL ALLEGATIONS**

4.      Plaintiff Robert Pitt, hereinafter referred to as "ROBERT PITT" and/or "plaintiff" and/or "PITT" is a natural person, who, at all times complained of in this action, resided in the State of California. Plaintiff is an honorably retired 33-year veteran of the California Highway Patrol who has the right to carry a concealed firearm on his person at all times, including at all times complained of herein, pursuant to Cal. Penal Code §12027.

5.      Defendant County of San Diego, hereinafter also referred to as "COUNTY", is a municipal entity located in the State of California; within the territorial jurisdiction of this court.

6.      Defendant David R. Smith, hereinafter referred to as "SMITH" is, and at all times complained herein, was, a deputy sheriff with the San Diego County Sheriff's Department. At all times complained of herein, SMITH was acting as an individual person under the color of state law, pursuant to his status as a peace officer, and was acting in the course of and within the scope of his employment with defendant COUNTY.

7.       Defendant Troy J. Doran, hereinafter referred to as "DORAN" is, and at all times complained herein, was, a detective deputy sheriff / supervisory

officer with the San Diego County Sheriff's Department. At all times complained of herein, DORAN was acting as an individual person under the color of state law, pursuant to his status as a peace officer, and was acting in the course of and within the scope of his employment with defendant COUNTY.

8.      Defendant George Calderon, hereinafter referred to as "CALDERON" is, and at all times complained herein, was, a Lieutenant and deputy sheriff / supervisory officer with the San Diego County Sheriff's Department. At all times complained of herein, CALDERON was acting as an individual person under the color of state law, pursuant to his status as a peace officer, and was acting in the course of and within the scope of his employment with defendant COUNTY.

9.      Defendants DOES 1 through 6, inclusive, are sworn deputy sheriffs and/or Sheriff's Department supervisors and/or investigators and/ Special Officers and/or a dispatchers and/or some other public officer, public official or employee of defendant COUNTY and/or otherwise employed by the San Diego County Sheriff's Department, who in some way committed some or all of the tortious actions (and constitutional violations) complained of in this action, and/or are otherwise responsible for and liable to plaintiffs for the acts complained of in this action, whose identities are, and remain unknown to plaintiffs, who will amend his complaint to add and to show the actual names of said DOE defendants when

COMPLAINT FOR DAMAGES

4

ascertained by plaintiffs.

10.     At all times complained of herein, DOES 1 through 6, inclusive, were acting as individual persons acting under the color of state law, pursuant to their authority as sworn peace officers and/or police officers and/or Special Officers and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or dispatchers, employed by the San Diego County Sheriff's Department, and were acting in the course of and within the scope of their employment with defendant COUNTY.

11.     Defendants DOES 7 through 10, inclusive, are sworn peace officers and/or the Sheriff and/or Undersheriffs and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or Detectives and/or other Supervisory personnel and/or the County Manager and/or the Assistant County Manager and/or other Supervisory personnel (such as) and/or policy making and/or final policy making officials, employed by the San Diego County Sheriff's Department and/or defendant COUNTY, who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiff in this action, such as via supervisory liability (i.e. failure to properly supervise, improperly directing subordinate deputies, approving actions of subordinate deputies), via bystander liability (failing to intervene in and stop unlawful actions of their subordinates and/or other

COMPLAINT FOR DAMAGES

officers), and such as by creating and/or causing the creation of and/or contributing to the creation of the policies and/or practices and/or customs and/or usages of the San Diego County Sheriff's Department for: 1) for using excessive / unreasonable force on persons; 2) for unlawfully seizing persons; 3) for unlawful searching and seizing persons and their personalty / property; 4) for falsely arresting and falsely imprisoning persons; 5) for fabricating / destroying / concealing / altering evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other deputy sheriffs and supervisory personnel from civil, administrative and criminal liability; 6) for interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech; 7) for covering-up unlawful and tortious conduct by San Diego County Sheriff's Department personnel, and were a proximate cause of the very same California state law, and federal and state constitutional violations complained above, and complained of by the plaintiff in this action.

12.    Plaintiff is presently unaware of the identities of DOES 1 through 10, inclusive, and will amend his complaint to add and to show the actual names of said DOE defendants, when ascertained by plaintiffs.

13.    At all times complained of herein, DOES 7 through 10, inclusive, were acting were acting as individual persons acting under the color of state law,

COMPLAINT FOR DAMAGES

pursuant to their authority as the Sheriff and/or Undersheriffs and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or the County Manager and/or the Assistant County Manager and/or other Supervisory personnel (such as) and/or policy making and/or final policy making officials, employed by the San Diego County Sheriff's Department and/or defendant COUNTY, and/or some other public official(s) with defendant COUNTY, and were acting in the course of and within the scope of their employment with defendant COUNTY.

14.    At all times complained of herein, defendants DOES 7 through 10, inclusive, were acting as individual persons under the color of state law; under and pursuant to their status and authority as peace officers and/or Supervisory peace officers (as described herein, above and below), and/or policy making peace officers, with the San Diego County Sheriff's Department and/or otherwise with defendant COUNTY.

15.    Moreover, at all times complained of herein, defendants DOES 1 through 10, inclusive, were acting pursuant to, or otherwise contributed to the creation and maintenance of, the customs, policies, usages and practices of the San Diego County Sheriff's Department / County of San Diego, for, *inter alia*: 1) for unlawfully seizing persons; 2) for unlawful searching persons; 3) for falsely arresting and falsely imprisoning persons; 4) for fabricating / destroying /

concealing / altering evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other police officers and supervisory personnel from civil, administrative and criminal liability; 5) for interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech; 6) for covering-up unlawful and tortious conduct by San Diego Sheriff's Department personnel; and (7) for using excessive / unreasonable force on persons; and were a proximate cause of the very same California state law, and federal and state constitutional violations complained above, and complained of by the plaintiffs in this action.

16.    In addition to the above and foregoing, defendants DOES 1 through 6, inclusive, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the plaintiff ROBERT PITT of his federal Constitutional and statutory rights, as complained of in this action, and acted in joint and concerted action to so deprive plaintiff ROBERT PITT of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in violation of United States (Constitutional and statutory) law.

17.    Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a proximate cause of the violation of the plaintiff ROBERT PITT's federal and state constitutional and

statutory rights, as complained of herein.

## FIRST CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983
### Violation of Fourth Amendment Rights –
### Unlawful / Unreasonable Seizure of Person
### (Against defendants SMITH, COUNTY and DOES 1 through 10, inclusive)

18.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 17, inclusive, above, as if set forth in full herein.

19.     On or about January 21, 2015, plaintiff ROBERT PITT and his cohabitant girlfriend, Lammone Khamsombhat, went to Ms. Khamsombhat's daughter's High School (Santana High School, located at 9915 Magnolia Avenue, Santee, California) to report to school officials the online death threats made against the daughter of plaintiff's girlfriend; a student at Santana High School, a minor "C.S.", who was 15 of age at the time of the subject incident.

20.     Said death threats were made against the minor C.S. the night before, on January 20, 2015, and constituted "criminal threats," within the meaning of Cal. Penal Code § 422, which prompted plaintiff and his girlfriend to notify school officials as they brought their daughter to school and sent her to class before proceeding to the school administration building to report the incident to school officials.

21.     Said threatening student had been previously expelled from Santana

COMPLAINT FOR DAMAGES
9

High School for his/her conduct and was banned from school property; which conduct of the threatening student was harmful enough to other students that the conduct warranted expulsion and banishment from Santana High School by school administrators. However, the expulsion did not stop the threatening student from continuing to make death threats against the plaintiff's girlfriend's daughter, minor C.S., over the internet.

22.    Said threatening student had made death threats to minor C.S. as a last resort—since being expelled and barred from campus was a barrier to the threatening student personally confronting and/or otherwise harming minor C.S. with violence or death, and her parents personally brought the child to school to protect her. Now the death threats became virtual electronically-based communications, and plaintiff and said minor's mother were at Santana High School to report the death threats to school administrators to prevent violence and/or death of their minor child C.S.

23.    Santana High School has a history of shooting violence dating back to 2001, being the scene of the worst school shooting since the Columbine incident when Charles "Andy" Williams created a makeshift bunker in the boy's bathroom and randomly started shooting students on March 6, 2001, killing two students and wounding 13 others (including two school supervisors) hit by gunfire that fateful day. At that time, during a news conference the day after the shooting

COMPLAINT FOR DAMAGES

10

on 2001, authorities said the carnage could have been much worse if not for the swift actions of a sheriff's deputy and an off-duty police officer who were on campus coincidentally conducting their children's business. Thus, two off-duty peace officers who were lawfully armed on campus were able to quickly respond to prevent further carnage at Santana High School in 2001.

24.     The swift actions of these lawfully armed off-duty peace officers in 2001 to prevent unnecessary murder and bloodshed by being lawfully armed on campus at Santana High School were apparently lost and/or forgotten by the current school administrators.

25.     As both plaintiff and the child's mother went to the school to report the on-line death threats against their daughter from the night before, they sent their daughter off to class and went into in the school administration offices waiting to speak with Vice-principal Larry Oedenwalt. They were asked to have a seat in the lobby and wait.

26.     Because of having to wait to speak with school administrators and report death threats, plaintiff attempted to call his employer to inform them that he would be late for work, when he was interrupted and approached by Principal Tim Schwuchow, who asked plaintiff to step alone into the Vice-principal's office, without the presence of the minor's mother.

27.     Plaintiff was then told to sit down and was interrogated by Principal

COMPLAINT FOR DAMAGES

11

Schwuchow, including inquiries about (a) his status as retired law enforcement; (b) whether there was a firearm contained within plaintiff's fanny pack; and (c) whether plaintiff had a valid permit to carry and conceal a loaded firearm.

28.    Plaintiff answered the principal's interrogation truthfully: (a) yes, plaintiff is retired law enforcement; (b) yes, plaintiff has a gun in his fanny pack; and (c) yes, plaintiff has a permit to carry a concealed weapon. This conceal carry permit (CCW) includes at all times mentioned herein and at all times otherwise, 24 hours a day, 7 days a week, 365 days a year, as his status as an honorably retired peace officer pursuant to Cal. Penal Code § 12027.

29.    Principal Schwuchow then told plaintiff "I don't care about your CCW. We do not honor those at my school. You cannot bring a weapon onto my campus. You are in violation of the law and you're going to jail!"

30.    Plaintiff informed Mr. Schwuchow that he was wrong, that plaintiff is an honorably retired peace officer and was thus exempt from any law which prohibited plaintiff from bringing his lawfully permitted firearm on campus; and plaintiff informed Mr. Schwuchow that he could lawfully bring his concealed weapon on campus.

31.    Mr. Schwuchow then responded to plaintiff with a broad grin smiling at plaintiff: "I am sure you are a nice guy and all, but if you bring a weapon to my school, you're going to jail."

COMPLAINT FOR DAMAGES

12

32.     Mr. Schwuchow then directed defendant SMITH to confiscate plaintiff's fanny pack, which he did, without a warrant nor probable cause nor even a reasonable suspicion of criminality afoot of plaintiff—all in violation of plaintiff's Fourth Amendment right to be free from such unlawful/unreasonable searches and seizures. Plaintiff was there to report on-line death threats being made against his girlfriend's daughter, and now his property was being taken from him without his consent.

33.     When defendant SMITH unlawfully seized plaintiff's fanny pack, he could not find any weapon inside. Plaintiff had to instruct defendant SMITH on how to open the compartment where plaintiff's CHP-issued service weapon was concealed during the illegal search and seizure of plaintiff's property.

34.     When defendant SMITH tried to unload the weapon, plaintiff had to instruct defendant SMITH how to unload the .40 caliber Sig Sauer pistol which served as plaintiff's service weapon when he was with the CHP for 33 years, because defendant SMITH lacked sufficient training to competently unload plaintiff's service weapon. The Sig Sauer pistol still contained .40 caliber full metal jacketed hollow-point bullets issued to plaintiff by the California Highway Patrol.

35.     At defendant SMITH was struggling to unload plaintiff's CHP service weapon, Mr. Schwuchow then directed defendant SMITH to arrest and

COMPLAINT FOR DAMAGES

13

search plaintiff. More specifically, as plaintiff had his property illegally seized and searched—and while defendant SMITH was struggling to unload plaintiff's service weapon—Mr. Schwuchow then directed defendant SMITH to illegally handcuff and search plaintiff, all without a warrant or probable cause or any suspicion of criminality afoot, by stating to defendant SMITH "I want him in handcuffs and searched, I want to know if he has other weapons on him." Plaintiff was now being arrested, even though he was at the school to report a crime and had not committed any crime.

36.    Defendant SMITH then handcuffed and arrested plaintiff, without a warrant or probable cause or reasonable suspicion of criminality afoot. Plaintiff tried to explain to defendant SMITH that he was exempt from any statutes prohibiting the carrying of firearms on campus pursuant to the aforementioned Cal. Penal Code §12027 and plaintiff directed defendant SMITH to retrieve his government-issued identification / conceal-carry permit issued by the California Highway Patrol.

37.    Mr. Schwuchow told plaintiff he did not care of plaintiff had a permit to carry a concealed weapon of campus; and defendant SMITH told plaintiff that his permit did not matter—no one is allowed to carry a gun on campus except defendant SMITH, something that is/was not true—yet plaintiff was arrested by defendant SMITH in retaliation for his verbal protests of being falsely arrested

when he was at the school to report a crime to school administrators.

38.     When defendant protested the illegal seizure of his person and property, defendant SMITH returned to plaintiff and cranked down the right handcuff as hard as he could on plaintiff's wrist (causing him great pain and suffering and injury) in retaliation for the verbal protests of plaintiff for having his property and person seized without a warrant nor probable cause nor even a reasonable suspicion of criminality afoot by plaintiff, who is an honorably retired 33-year veteran law enforcement officer for the California Highway Patrol.

39.     When plaintiff verbally protested to SMITH that the cuffs were too tight, defendant SMITH replied "It'll be okay." Such excessive handcuffing and indifference to plaintiff's pain and suffering was done maliciously by SMITH, to intentionally physically injure plaintiff, and in violation of plaintiff's First Amendment right to protest the unlawful conduct and physical harm being caused by defendant SMITH.

40.     After the excessive handcuffing of plaintiff, defendant SMITH then performed a "pat down" search of plaintiff, in violation of his Fourth Amendment right to be free from unlawful searches and seizures of her person and his property. During the pat down search of plaintiff's person, Mr. Schwuchow stood watching and laughing at plaintiff, causing plaintiff to suffer extreme embarrassment and humiliation as the veteran law enforcement officer plaintiff

COMPLAINT FOR DAMAGES

was being falsely arrested, handcuffed and seized, along with all of his property, including plaintiff's fanny pack with its contents and service weapon, being also illegally seized by defendant SMITH.

41.     Plaintiff was then humiliatingly frog-marched out of Santana High School in handcuffs by defendant SMITH and towards a patrol car; at which time defendant SMITH was once again told by plaintiff that plaintiff was an honorably retired police officer and as such, was allowed to possess and carry a firearm on campus under state law, specifically Cal. Penal Code § 12027. Defendant SMITH once again told plaintiff "No, I am the only person allowed to have a firearm at this school." Something that was not true at all.

42.     Plaintiff has then pushed up against a patrol car with his hands cuffed behind him and was searched again, without a warrant or probable cause or a reasonable suspicion of criminality afoot. Plaintiff once again complained about the right handcuff being ratcheted down too tightly, causing plaintiff great pain and suffering, and plaintiff once again asked defendant SMITH to loosen the right cuff a couple of notches because it was hurting plaintiff tremendously. Defendant SMITH was once again deliberately indifferent to the verbal protests of plaintiff's pain and suffering of plaintiff and told plaintiff "It'll be alright, we'll be at the station soon."

43.     After SMITH deliberately ignoring plaintiff's verbal protests at being

hurt and injured by defendant SMITH, plaintiff was then shoehorned (plaintiff is 6'-3" and 250 lbs.) by SMITH into a cage in the back of a patrol car. Plaintiff had to wedge himself into the cage. At that time, there was extreme pressure being exerted upon plaintiff's right wrist as he sat in the cage arrested and handcuffed excessively and protesting his complaints. Defendant SMITH then left plaintiff unattended, handcuffed and wedged in the cage in the back of a patrol car.

44.    When defendant SMITH returned to the patrol car after several minutes, plaintiff once again pleaded with SMITH too loosen the right cuff, to which defendant SMITH deliberately ignored plaintiff's pain and suffering and stated "We'll be at the station soon."

45.    Upon arrival at the Santee substation of the San Diego County Sheriff's Department to be booked, plaintiff was searched once again; and plaintiff's handcuffs were finally removed and plaintiff's left wrist was handcuffed to a bench while defendant SMITH prepared the paperwork for plaintiff's false felony arrest. Upon removal of the right handcuff, plaintiff had total numbness in his right little finger, middle finger, and ring finger, as well as a painful red marks on both sides of the ulnar side of plaintiff's right wrist.

46.    Defendant SMITH then sat across from plaintiff to type and write up plaintiff's false felony arrest report. Plaintiff once again advised SMITH that his California Highway patrol issued identification with a conceal carry permit was

COMPLAINT FOR DAMAGES

inside his wallet on the reverse flap holding plaintiff's driver license. Defendant SMITH acknowledged the CHP identification and conceal carry permit by stating "I know, I saw it."

47.     Defendant SMITH only asked one question of plaintiff: to verify that plaintiff's address was the same as his driver license; to which plaintiff replied that his home address is the same listed on his driver license. Defendant SMITH neither Mirandized nor questioned plaintiff concerning the violation of any law.

48.     Defendant SMITH then asked plaintiff to sign his property sheet, but plaintiff is nearly blind without his prescription eyeglasses, and requested his glasses from defendant SMITH before signing any documents during the booking process. Plaintiff was given his glasses by SMITH to sign his property report, and plaintiff asked if there would be anything further he would need to read at the jail, because if there was more to read while being incarcerated, plaintiff would need his prescription eyeglasses. Plaintiff was told by defendant SMITH "You won't need them, everything is written big enough to read." Defendant SMITH then took plaintiff's prescription eyeglasses from him and placed them into his property bag, making plaintiff essentially blind, for the remainder of his false arrest and imprisonment.

49.     Deputy SMITH then joked with his fellow officers at the jail about booking procedures for prisoners in the main jail, as he normally takes his

COMPLAINT FOR DAMAGES

18

prisoners to juvenile hall.

50.     Plaintiff was then placed in waist chain wrist cuffs by defendant SMITH for transport to the main jail, even though plaintiff had committed no crime. During transport to the main jail plaintiff repeatedly told defendant SMITH that plaintiff was an honorably retired peace officer with a valid CCW and was thus exempt from violating any law prohibiting plaintiff from carrying a firearm on school campus. Defendant SMITH told plaintiff that he was wrong.

51.     Upon arrival at the main jail plaintiff was taken to a secured area and seated on a bench restrained with a belly chain and cuffs. Mug shots were being taken in the area, and while other prisoners had their cuffs removed, plaintiff's cuffs were left on, and he was treated differently in retaliation for his verbal protests at being falsely arrested for a felony after a lifetime career in law enforcement.

52.     During the course of plaintiff's booking, defendant SMITH had parked his patrol car blocking the jail bus that was trying to park there to unload prisoners. Plaintiff was then led back out to SMITH's patrol car in waist chains and cuffs and again wedged into the cage into the back of the patrol car so that defendant SMITH could move his patrol car approximately 15-20 feet to permit the unloading of the jail prisoner bus.

53.     Plaintiff was then taken back out of SMITH's patrol car and back

into the main jail to have his mug shot taken. Said mug shot of plaintiff's false felony arrest has now been publicly disseminated causing irreparable harm to plaintiff's reputation, good will and employment status, as described herein.

54.     Plaintiff then was then brought before medical staff and asked if he had any medical issues. Plaintiff complained about numbness in his right hand from the excessive handcuffing, but nothing was done to treat or even acknowledge plaintiff's injuries he suffered at the hands of defendant SMITH's excessive handcuffing of plaintiff.

55.     Plaintiff finally had his cuffs removed after approximately two hours of being fully restrained and was thrown into a holding cell nearly blind without his glasses with the general population, despite the fact it is jail policy to segregate law enforcement personnel, active and retired, from the general population for safety reasons.

56.     Plaintiff was intentionally placed into general population by defendant SMITH as an act of retaliation for plaintiff's verbal protests at being falsely arrested, and now plaintiff was being maliciously placed into general population by SMITH with the intent that plaintiff would be threatened, assaulted and battered upon discovery by other prisoners, especially gang members, of plaintiff's status as retired law enforcement. Plaintiff was shocked that he was being placed into the general population as his status as an honorably retired 33-

COMPLAINT FOR DAMAGES

year veteran of the California Highway Patrol.

57.     Plaintiff was also prevented from making a phone call from inside the jail cell where plaintiff was confined, because such a call would require the input of plaintiff's booking number on his wristband—which he could not read because his glasses had been taken away from him. As a result, plaintiff was unable to call for help getting out of jail.

58.     Within fifteen minutes of being thrown into a cell for approximately two hours with the general population of the jail, plaintiff was confronted by a self-professed gang member and drug dealer who was high on drugs, and accused plaintiff of being a cop. This prisoner asked plaintiff "Who the fuck are you? You a fuckin' cop?"

59.     Plaintiff swallowed his pride and responded that he was not a cop and asked the prisoner "Why? Do I look like a cop?" The prisoner responded: "Yeah, you look just like a fuckin' cop." "Why is a cop in here? You know this is entrapment motherfucker."

60.     The aforementioned prisoner began to encourage the other prisoners in the locked cell to assault and "beat the shit out of this cop." Plaintiff continued to swallow his pride and deny he was a peace officer. The prisoner then asked plaintiff "Then why are you in here man?" Plaintiff responded that he was in jail because of a big mistake, to which the prisoner responded, "Yeah, we all in here

COMPLAINT FOR DAMAGES

for big mistakes." Another prisoner who the threatening prisoner knew was placed into the cell which distracted the threatening prisoner; but for the remainder of the approximately two hours plaintiff was locked up in general population, he felt threatened with his life, as he was outnumbered 8:1 in that holding cell with the general population, which included self-professed violent gang members and drug dealers.

61.    During those two hours locked in a cell with violent gang members in the general population instead of being segregated pursuant to the jail's own policy, plaintiff requested on three occasions from three separate DOE deputies to write down his booking number on a piece of paper big enough to read so that plaintiff could call for help getting out of jail, as plaintiff was unable to read his booking number after having his glasses taken from him to deprive plaintiff of his sight. Each time plaintiff requested his booking number be written down so he could make a phone call, plaintiff was refused by three separate said DOE deputies to write down his booking number so that plaintiff could call for help.

62.    After being locked in a cell with violent and threatening gang members for two hours instead of being segregated from the general population, plaintiff was then taken out of the holding cell and was illegally searched again. Plaintiff was placed in front of a booking clerk who told plaintiff he needed to post $25,000.00 bail or plaintiff would not be released. Plaintiff was given a

COMPLAINT FOR DAMAGES

felony arraignment date of January 23, 2015 at 8:00 a.m. in the El Cajon court house of the Superior Court of California for the County of San Diego.

63.     Plaintiff was asked by said DOE booking clerk if plaintiff knew what he was being arrested for. Plaintiff told said DOE booking clerk that he had been arrested for carrying a firearm on campus, even though plaintiff carried a valid CCW.

64.     Plaintiff was then fingerprinted and escorted by another unidentified deputy sheriff who asked if plaintiff was retired law enforcement. Plaintiff responded that yes, he is retired law enforcement. Said unidentified deputy responded with "What the fuck!" and then placed plaintiff into a holding cell in protective custody while plaintiff's processing / felony booking was completed.

65.     Said unidentified jail deputy sheriff was kind enough to write down plaintiff's booking number large enough for plaintiff to read so that plaintiff could call for help. Plaintiff then spent approximately the next four hours locked up in a cell by himself. It was the first time in over two hours that plaintiff felt his life would not be threatened by other prisoners or otherwise be jeopardy for his status as honorably retired law enforcement.

66.     After approximately two hours into being placed into a segregated cell, another unidentified deputy sheriff asked plaintiff why he was in a cell by himself. Plaintiff responded "I guess it's for protective custody." Said unidentified

deputy sheriff then asked "Why are you some type of law enforcement?" Plaintiff told said unidentified deputy sheriff that he was a retired peace officer, and said unidentified deputy sheriff inquired as to which agency plaintiff was retired from. Plaintiff identified himself as a retired California Highway Patrol officer. Plaintiff explained to said deputy sheriff what had taken place, that he had been falsely arrested when he carried a valid CCW, and said deputy sheriff just shook his head and walked away.

67.     After approximately 4:00 p.m. another unidentified deputy sheriff unlocked plaintiff's cell and said "Okay, let's go." As plaintiff was being escorted by said deputy sheriff, plaintiff was asked again if he was retired law enforcement, to which he responded that he was. Said deputy sheriff asked plaintiff why he was in jail, and plaintiff told said deputy sheriff, and plaintiff again stated that he had taken his fanny pack with his weapon inside onto the high school campus while dropping off his daughter. Said deputy sheriff asked if plaintiff had a valid CCW and plaintiff responded that he had a valid CCW issued to him by the CHP. Said deputy sheriff also responded like the last deputy sheriff with "What the fuck?" Plaintiff was advised by said deputy sheriff that plaintiff needed to fight this with everything he has got, and plaintiff told said unidentified deputy sheriff that he intended to do so, as plaintiff did what he had been doing for nearly 35 years, carrying an authorized concealed weapon. Plaintiff expressed to said deputy

sheriff that this day was the most humiliating day of his life. Plaintiff told said

deputy sheriff that he was an honorably retired and highly commended peace

officer and plaintiff had not broken the law but was treated as a felon.

68.     Said unidentified deputy sheriff felt sorry for plaintiff, and placed

plaintiff into the release area, foregoing further detention in the release holding

tank; presumably because during the booking process, said defendant DOE

deputies figured out that plaintiff had not committed a crime.

69.     Plaintiff stepped up to the release window and told the clerk "I guess

my bail was finally posted." The clerk at the window informed plaintiff that there

was no bail and all charges had been dropped. The female clerk at the window

also told plaintiff that once he signed for his property, he was free to go and there

would be no further proceedings on this arrest.

70.     The female clerk at the release window inside the jail also told

plaintiff that there would be no hearing date because there was no arrest, and

plaintiff was given a "Certificate of Release" which falsely states that plaintiff was

merely "detained," and not "arrested," pursuant to Cal. Penal Code § 849(b)(1).

71.      However, plaintiff's felony arrest is a matter of public record which

has harmed plaintiff and is irretrievable from the public domain, such as arrest

information, home address and mug shots, which have now been widely

disseminated to the public. Realizing the San Diego County Sheriff's Department

COMPLAINT FOR DAMAGES

/ COUNTY had made a grave error in falsely arresting plaintiff and incarcerating him, it was clear to plaintiff they wanted him out of the jail as quickly as possible.

72.    The following day, January 22, 2015, plaintiff went to work and was told to report to his manager's office, whereupon plaintiff was advised that he violated employment policies by failing to appear at work and not requesting a day off prior to his absence and not informing anyone as to the status of his whereabouts and circumstances of his absence. As plaintiff did not have access to a phone the entire day he was in jail, plaintiff explained to both his Supervisor and Manager the circumstances of plaintiff's absence from work and failure to call-in were completely out of plaintiff's control. Despite providing an excuse as to why he was not at work, plaintiff was still considered AWOL from his job and was docked one day's pay for his absence from work.

73.    That same day following the subject incident, January 22, 2015, plaintiff went to the Santee substation to recover his weapon and fanny pack, and spoke with defendant deputy Troy J. Doran ("DORAN"), who told plaintiff that since he was a suspected felon and the subject of an ongoing criminal investigation, there was no way plaintiff was going to get his weapon released to him.

74.    Defendant DORAN further told plaintiff that as retired law enforcement, plaintiff should know that a Cal. Penal Code § 843(b)(1) release did

COMPLAINT FOR DAMAGES

26

not mean charges were dropped, and said § 843(b)(1) release simply meant plaintiff was being released after being "detained" for more than eight hours.

75.     Plaintiff then asked defendant DORAN that, if charges were pending, then why was plaintiff released without posting bail? Plaintiff also asked DORAN who authorized the § 843(b)(1) release. Defendant DORAN returned approximately ten minutes later and told plaintiff that the sergeant on duty during the subject incident (Sergeant Joel Stranger) the day before (January 21, 2015) had called the main jail and had authorized plaintiff's release.

76.     Defendant DORAN further told plaintiff that the only way he could get his weapon returned to him is after it was adjudicated that plaintiff was innocent. Only then, could plaintiff apply to have his weapon returned to him, after plaintiff payed for his own criminal background check and pay for plaintiff's own clearance with the Department of Justice to check and see if plaintiff's weapon has been used in other crimes. Defendant DORAN further advised plaintiff that it could take months, or even years, to recover his CHP-issued service weapon, even if plaintiff is found innocent in a court of law.

77.     Plaintiff left the police station and encountered Assistant Principal Mr. Oedewaldt at the 7-11 store a few moments after plaintiff's encounter with defendant DORAN. Mr. Oedewalt asked to speak with plaintiff privately, and told plaintiff that the "Captain" of the Criminal Investigations Unit of the San Diego

County Sheriff's Department had personally come to Santana High School that morning, January 22, 2015.

78.     Mr. Oedewaldt told plaintiff that it was communicated to school administrators, including Mr. Oedewaldt, by said "Captain" that there was a misinterpretation of the law yesterday, and that the deputy sheriff (defendant SMITH) should have never taken plaintiff into custody. Mr. Oedewaldt further informed plaintiff that all charges had been dropped and desired to put this incident behind them. Mr. Oedewaldt further apologized to plaintiff and told him it must have been horrible being arrested and going to jail.

79.     Plaintiff then told Mr. Oedewaldt that what he was telling him was all fine and great, but plaintiff had just returned from the sheriff's sub-station and was told by defendant DORAN that there was still an ongoing felony criminal investigation and plaintiff could face up to five (5) years in prison if convicted.

80.     Plaintiff requested the name and rank and the supervisory officer who told Mr. Oedewaldt and other school administrators that there had been a "misinterpretation" of the law on that day, January 22, 2015. The following week, plaintiff was informed that said "Captain" who informed them of the "misinterpretation" was actually Lieutenant George Calderon ("CALDERON").

81.     Plaintiff spoke with defendant CALDERON, who was entirely unhelpful and exhibited total indifference to plaintiff's false arrest and retaliatory

COMPLAINT FOR DAMAGES

animus towards plaintiff for his verbal protests of same.

82.     When asked if charges were going to be filed against plaintiff, CALDERON merely replied "I cannot disclose that information to you."

83.     CALDERON further told plaintiff he was subject to criminal investigation and could face up to five years in state prison and threatened to have plaintiff maliciously prosecuted by sending the matter to the District Attorney's Office for defendant COUNTY.

84.     Defendant CALDERON also told plaintiff that he was not an honorably retired peace officer and did not have a valid conceal-carry permit, something that was not true at all.

85.     Plaintiff informed CALDERON that this could not be possible, as he physically holding his retired CHP identification which shows (1) plaintiff is an honorably retired peace officer; and (2) plaintiff had a valid permit to carry a concealed firearm at all times.

86.     When questioned about this false information, CALDERON told plaintiff that he had spoken with a woman at the CHP who disclosed to CALDERON that plaintiff was not honorably retired nor permitted to carry a concealed firearm. When plaintiff asked defendant CALDERON who he had spoken to at the CHP, plaintiff was told once again by CALDERON that he was "not at liberty to disclose that information."

87.     CALDERON knew that plaintiff was an honorably retired peace officer and thus authorized to carry a concealed weapon at all times on his person, as his CHP-issued identification clearly states; but defendant CALDERON made material misrepresentations of fact to plaintiff to conceal and cover-up the tortious and unlawful conduct of his subordinate officers, defendants SMITH and DORAN.

88.     The following morning, January 23, 2015, plaintiff was called into the offices of Human Resources of his employer, The County of San Diego Department of Child Protective Services; more specifically, the Director of Human Resources called plaintiff into his/her office with another Human Resources Representative and plaintiff's Manager.

89.     Plaintiff was shocked to discover that the Director of Human Resources had been contacted by both County Counsel and the San Diego County Sheriff's Department / defendant COUNTY about the subject incident as retaliation for plaintiff verbally protesting his false arrest and imprisonment and the unlawful / unreasonable taking / theft of his CHP-issued service weapon, all without probable cause, or a warrant, or even reasonable suspicion of criminality afoot by plaintiff.

90.     Once inside the Director of Human Resources office, plaintiff was shown portions of the Department of Child Protective Services and County of San

Diego employee manuals and workplace policies regarding weapons in the workplace. Plaintiff was informed that he is not to carry a concealed weapon at the workplace, even though plaintiff had done no such thing, and was fully aware of his workplace policies prohibiting weapons of any kind.

91.     Plaintiff was then told that he is not allowed to carry a concealed weapon anywhere on COUNTY property, and that plaintiff is/was not permitted to carry a firearm in his car, which was parked on COUNTY property. Plaintiff was informed that Executive Management knew where he parked his car and his car and his person could be subject to search, and that these are the same policies plaintiff agreed to when he was hired by defendant COUNTY as a Child Support Officer approximately 12 years ago.

92.     Plaintiff knew the aforementioned employment policies when he was hired 12 years ago by defendant COUNTY just as he knows them now. Plaintiff has never violated these policies yet now he was being confronted and questioned directly as if he had violated those workplace policies, and plaintiff was now being interrogated by Human Resources as if he had violated employment policy by asking plaintiff pointedly if he had any weapons on him.

93.     Plaintiff was now being wrongly accused by his employer of carrying a concealed weapon at work as a result of an act of retaliation through the materially false statements made to plaintiff's employer by defendants COUNTY,

COMPLAINT FOR DAMAGES

SMITH, DORAN, CALDERON and/or DOES 1 THROUGH 10, inclusive, that plaintiff carried his gun to work, something that was not true.

94.   Plaintiff was also interrogated by his employer as if plaintiff was a threat or danger to the safety and well-being of his co-workers because of his false arrest for lawfully carrying a firearm at Santana High School to report death threats being made against the minor C.S. on January 21, 2015; all of which occurred while plaintiff was not at work, nor at his workplace and was 22 miles from his office when his false arrest took place two days prior to being formally disciplined for not showing up for work.

95.   Plaintiff now feels threatened at work, lives in constant fear of losing his job, and is under constant scrutiny at work with his employers trying to find cause to terminate his employment, all in retaliation for plaintiff's false arrest and the material false statements made in retaliation to his employer COUNTY by defendants COUNTY, SMITH, DORAN, CALDERON and DOES 1 through 10, inclusive.

96.   Said false arrest of plaintiff followed by the retaliatory material false statements made about plaintiff carrying a gun to work by the agents and/or representatives and/or supervisory officer DOE defendants has caused plaintiff tremendous emotional distress, pain and suffering (which have no manifested into physical damages) because of the retaliatory animus and false reporting and

COMPLAINT FOR DAMAGES

32

felony arrest of plaintiff by defendants COUNTY, SMITH, DORAN, CALDERON and DOES 1 THROUGH 10, inclusive.

97.     As a result, plaintiff suffered adverse employment actions as a result of the retaliatory animus and false reporting of defendants, and each of them, and plaintiff's false arrest, which caused plaintiff to be absent from work. Plaintiff was given a formal reprimand at his annual review following his false arrest for his failure to show up for work—which is a permanent negative comment/adverse employment action in his personnel file.

98.     Plaintiff was also warned by his employer COUNTY that if he was to have any such "incidents" happen again, he could face further disciplinary action(s).

99.     Later that day, January 23, 2015, on his way home from work, plaintiff stopped at the Santee substation of defendant COUNTY Sheriff's Department to obtain a copy of his arrest report and attempt to get his gun back, as plaintiff was never informed in writing of what criminal statute he violated that resulted in his false arrest.

100.    Plaintiff filled out a form to request a copy of his arrest report, but was told by an unidentified COUNTY clerk that plaintiff was not entitled to a copy of his own arrest report, as only the victim was entitled to a copy of plaintiff's arrest report. Plaintiff them asked the clerk: "Then how am I supposed

COMPLAINT FOR DAMAGES

33

to know what I am being charged with?" to which the unidentified female COUNTY clerk told plaintiff "You should have asked the deputy that arrested you."

101.   Plaintiff explained to the unidentified COUNTY clerk that he believed he would be given something in writing showing what criminal statute he violated, otherwise, how would plaintiff know what crime plaintiff had committed? Plaintiff was told by the unidentified COUNTY clerk that plaintiff would know what he was being charged with when he goes to stand before a judge. Plaintiff explained to the unidentified COUNTY clerk that all he needed was the code section he was being accused of violating. The unidentified COUNTY clerk told plaintiff she would ask before disappearing behind a one-way mirrored wall.

102.   Approximately ten minutes later, defendant DORAN appeared and told plaintiff he did not need to come by the station, that plaintiff could call DORAN instead, and DORAN was visibly annoyed and uncomfortable by the presence of plaintiff because DORAN knew plaintiff had been falsely arrested and plaintiff was there for answers and wanted his gun returned to him which was unlawfully taken from him.

103.   Plaintiff explained to defendant DORAN that he was stopping by on his way home from work and plaintiff was not aware that he could not obtain a

copy of his own arrest report or retrieve his CHP-issued service weapon. Plaintiff only asked DORAN for the code section plaintiff allegedly violated.

104.   Defendant DORAN then handed plaintiff a scrap of paper which read "626.9(b) PC Have a Firearm at Public School." Plaintiff confirmed with defendant DORAN that was the only charge against plaintiff.

105.   Plaintiff also asked DORAN for his gun back, and was told he would not get his gun back because "we do not return guns to criminals," further depriving plaintiff the right to his CHP-issued service weapon.

106.   Upon leaving the substation, plaintiff knew he could not possibly be charged with a violation of Cal. Penal Code § 626.9(b) because § 626.9(o) specifically exempts honorably retired peace officers with valid CCW permits such as plaintiff from Section's 626.9(b) prohibition against carrying guns at schools. Yet plaintiff was falsely arrested for a non-existent felony despite his numerous verbal protests at being falsely arrested and having his property taken from him; because defendants, and each of them, are so poorly trained they did not even bother to read the very code section they arrested plaintiff for and took plaintiffs fanny pack and service weapon contained therein and falsely arrested plaintiff out of retaliatory animus towards plaintiff for those very same verbal protests.

107.   To this day, plaintiff has not been provided a copy of an arrest report

COMPLAINT FOR DAMAGES

35

or a crime report of his above-referenced arrest, even though plaintiff has made numerous requests for the same. Defendant COUNTY simply refuses to give plaintiff a copy of his own arrest report of plaintiff's false felony arrest.

108.   Shortly after plaintiff's false arrest, plaintiff started receiving unsolicited advertisements from criminal defense attorneys in the U.S. Mail. Plaintiff's address—which home address he tried to keep secret for 35 years for his own safety and for the safety of his family—is now public information available to anyone. Plaintiff's anonymity has now been irretrievably breached and violated, and plaintiff's reputation has been harmed by plaintiff's false felony arrest caused by said defendants, and each of them.

109.   During his long career in law enforcement, plaintiff received numerous death threats, some from notorious organized criminal gangs such as Hell's Angels, Crips, Bloods, Mexican Mafia, among others. Now these very same criminal organizations have the ability to look up plaintiff on the internet and know exactly where plaintiff and his family live and sleep at night.

110.   In addition, plaintiff had his CHP-issued service weapon taken from him, all without a warrant or probable cause or reasonable suspicion that plaintiff committed any crime, and thus was unable to protect himself and his family once his private information and home address were publicly disseminated by said defendants, and each of them.

111.   On March 13, 2015, plaintiff went to the "gun locker" at the San Diego County Sheriff's Department property office in response to phone call from a Sergeant Joel Stranger, who told plaintiff paperwork had been prepared for the return of his duly authorized firearm. However, when plaintiff arrived to pick up his gun, plaintiff was told by "Tammy" at the San Diego County Sheriff's property office that plaintiff could not have his gun back.

112.   Plaintiff was then told by "Tammy" that plaintiff had to complete Department of Justice ("DOJ") paperwork she would provide plaintiff, and that plaintiff would have to apply with the Department of Justice and pay a filing fee. Plaintiff was told by "Tammy" that the processing time for the application for plaintiff to have his gun returned to him would take approximately 4 to 6 months, and if plaintiff and his gun were cleared by the DOJ, plaintiff would be issued a certificate from the DOJ. Once plaintiff had his DOJ certificate, he could then re-apply with the San Diego County Sheriff's Department to have his CHP-issued service weapon returned to plaintiff.

113.   After incurring substantial time and expense and dealing with the uncooperative San Diego County Sheriff's Department, plaintiff eventually got his gun back sometime in April 2015, approximately four months after it was taken from plaintiff without a warrant or probable cause or even a reasonable suspicion plaintiff had committed a crime.

COMPLAINT FOR DAMAGES

114.   That same day, March 13, 2015, plaintiff was contacted by the Internal Affairs Unit of the San Diego County Sheriff's Department, as said Internal Affairs Department was performing its own investigation into the actions of defendant SMITH on January 21, 2015. Plaintiff spoke with Sergeant Brian Nevins, who refused to disclose to plaintiff any information concerning plaintiff's false arrest by defendant SMITH, other than defendant SMITH was facing disciplinary action.

115.   Sergeant Nevins also referred to plaintiff's false arrest an "encounter;" meaning plaintiff's "arrest" had morphed into a "detention" by way of a certificate of release, and was now merely an "encounter" to the San Diego County Sheriff's Department. However, said Internal Investigation of defendant SMITH and the subject incident was self-initiated by COUNTY and/or DOES 1 through 10, inclusive, and/or unidentified supervisory deputy sheriff DOE defendants because said defendants knew defendant SMITH had acted unlawfully in falsely arresting plaintiff for a felony on January 21, 2015.

116.   Accordingly, the seizure and arrest of ROBERT PITT by defendant SMITH, and DOES 1 through 5, inclusive, by use of force on ROBERT PITT, constituted an unlawful and unreasonable seizure of ROBERT PITT (i.e. an unlawful detention and then an unlawful arrest of his person), without a warrant or probable cause to believe that he committed a crime, in violation of ROBERT

COMPLAINT FOR DAMAGES

PITT's right to be free from such a seizure under the Fourth Amendment to the United States Constitution.

117.   As a direct and proximate result of the actions of defendants SMITH and DOES 1 through 10, inclusive, as complained of herein, ROBERT PITT: 1) was substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred attorney's fees and associated litigation and other related costs, and 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $5,000,000.00.

118.   The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant COUNTY, in an amount to be proven at trial, in excess of $5,000,000.00.

<u>**SECOND CAUSE OF ACTION**</u>
<u>**VIOLATION OF 42 U.S.C. § 1983**</u>
**Violation of Fourth Amendment Rights**
**Excessive / Unreasonable Use of Force on Person**
**(Against defendants SMITH, COUNTY and DOES 1 through 10, inclusive)**

COMPLAINT FOR DAMAGES

119.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 118, inclusive, above, as if set forth in full herein.

120.   As shown above, defendant SMITH and DOES 1 through 5, inclusive, used unreasonable / unlawful force upon ROBERT PITT, causing permanent injury to plaintiff's wrist and hands, as well causing plaintiff severe emotional distress, which have manifested into physical damages.

121.   The actions of said defendants, in using unreasonable force upon ROBERT PITT, as shown above, constituted a violation of ROBERT PITT's rights under the Fourth Amendment to the United States Constitution to be free from the use of unlawful, unreasonable and excessive force upon his person.

122.   As a direct and proximate result of the actions of SMITH, COUNTY and DOES 1 through 10, inclusive, ROBERT PITT was: 1) substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses, and 3) suffered terrible physical injury, pain and suffering, as well as mental and emotional pain and suffering, which have manifested into physical damages; all in an amount to be proven at trial; in excess of $5,000,000.00.

123.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of

COMPLAINT FOR DAMAGES
40

ROBERT PITT's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $5,000,000.00.

### THIRD CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### Violation of Fourth Amendment Rights –
### Unlawful Search And Seizure of Property
### (Against all Defendants)

124.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 123, inclusive, above, as if set forth in full herein.

125.   As shown above, defendants SMITH and DOES 1 through 10, inclusive, searched and seized plaintiff ROBERT PITT and his personalty following his illegal felony arrest.

126.   There was neither probable cause, nor reasonable suspicion that evidence of a crime was being committed by plaintiff ROBERT PITT, nor was there any legal justification for searching plaintiff ROBERT PITT's person and property, and the defendants had no search warrant for the plaintiff's fanny pack before unlawfully seizing plaintiff's CHP-issued service weapon.

127.   Accordingly, the search of ROBERT PITT's fanny pack (and the contents thereof, including his pistol) and his person by defendant SMITH, COUNTY and DOES 1 through 10, inclusive, was unreasonable and done

COMPLAINT FOR DAMAGES

intentionally to deprive plaintiff of his liberty and his property, which constituted an unlawful and unreasonable search of ROBERT PITT's person and property, in violation of his right to be free from such a seizure under the Fourth Amendment to the United States Constitution.

128.   As a direct and proximate result of the actions of defendants SMITH, COUNTY and DOES 1 through 10, inclusive, as complained of herein, ROBERT PITT was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) attorney's fees and associated litigation and other related costs, and 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $5,000,000.00.

129.   The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights and his status as a honorably retired peace officer, authorized at all times mentioned herein to conceal and carry a weapon, sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant COUNTY, in an amount to be proven at trial, in excess of $5,000,000.00.

**<u>FOURTH CAUSE OF ACTION</u>**
**<u>Violation Of Right To Freedom Of Speech</u>**
**VIOLATION OF 42 U.S.C. § 1983**

COMPLAINT FOR DAMAGES

## Violation Of First Amendment Rights
### (Against All Defendants)

130.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 129, inclusive, above, as if set forth in full herein.

131.   As shown above, SMITH and DOES 1 through 10, inclusive, falsely arrested plaintiff ROBERT PITT on bogus charge of violation of Cal. Penal Code § 626.9(b) with the full knowledge plaintiff ROBERT PITT was exempt from Cal. Penal Code § 626.9(b) by the exemption contained within the very same statute: Cal. Penal Code § 626.9(o).

132.   Also as shown above, SMITH and DOES 1 through 10, inclusive, knew that plaintiff ROBERT PITT had not committed a violation of Cal. Penal Code § 626.9(b) because plaintiff ROBERT PITT had shown defendant SMITH and DOES 1 through 10, inclusive, that plaintiff was authorized to carry a concealed firearm when plaintiff ROBERT PITT presented his valid CCW on his CHP-issued identification upon his false felony arrest. However, plaintiff protested his detention by defendants, and a substantial or motivating factor in the decision of SMITH and DOES in arresting plaintiff ROBERT PITT, in handcuffing his too tightly, in having him incarcerated in jail in general population, and in otherwise mentally tormenting plaintiff ROBERT PITT, was

plaintiff ROBERT PITT's verbal protests to SMITH and DOES about his seizure of him.

133.   Plaintiff's CHP-issued identification at the time of his false arrest bears the following language on its face "The person identified hereon in an honorably retired sworn officer of the California Highway Patrol and is entitled to carry a concealed firearm per 12027 PC."; and, nonetheless, defendant SMITH authored bogus police reports to justify plaintiff ROBERT PITT's false arrest, since defendant SMITH would feel foolish "unarresting" plaintiff.

134.   At the time and date of plaintiff ROBERT PITT's arrest in this matter, the policy, custom, usage and practice of the San Diego County Sheriff's Department is to arrest persons such as plaintiff ROBERT PITT for challenging or protesting actions by police officers; notwithstanding his constitutional right to do so under the First Amendment to the United States Constitution.

135.   Accordingly, making persons arrested for alleged bogus violations of crimes they did not commit, such persons such as plaintiff ROBERT PITT are routinely and systematically retaliated against by: (1) using excessive force in handcuffing plaintiff; (2) placing plaintiff in danger by not segregating law enforcement from the general population at the main jail; (3) keeping plaintiff locked up in a cell for many hours when SMITH and DOES 1 through 10, inclusive, knew plaintiff had not committed any crime; (4) taking plaintiff's CHP-

COMPLAINT FOR DAMAGES

issued service weapon from him, among other forms of retaliation, as described above.

136.   Moreover, said defendant deputy sheriffs were fully aware of this policy, custom, usage and practice of the San Diego County Sheriff's Department, and defendant SMITH authored a police report making false material statements of fact to carry out this retaliatory policy.

137.   As a direct and proximate result of the actions of defendants SMITH and DOES 1 through 10, inclusive, as complained of herein, plaintiff ROBERT PITT: 1) was substantially physically, mentally and emotionally injured, 2) incurred medical and psychological costs, bills and expenses, 3) attorney's fees and expenses, and 4) incurred other special and general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

138.   The actions of defendants SMITH and DOES 1 through 10, inclusive, were committed maliciously, oppressively and/or in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants, save for defendant COUNTY, in an amount to be proven at trial which is in excess of $5,000,000.00.

## FIFTH CAUSE OF ACTION
### Claim Against Local Governing Body Defendants Based On Policy Of Failure To Train

COMPLAINT FOR DAMAGES

**[42 U.S.C. § 1983]**
**(Against Defendants County, and DOES 7 through 10)**

139.   Plaintiff hereby realleges and incorporate by reference the allegations set forth in paragraphs 1 through 138, inclusive, above, as if set forth in full herein.

140.   As shown above, when defendants SMITH, DORAN and CALDERON and DOES 1 through 10, inclusive, deprived plaintiff ROBERT PITT of his particular rights under the United States Constitution, they were acting under the color of state law.

141.   The training policies of defendants COUNTY and DOES 7 through 10, inclusive, were not adequate to train their deputy sheriffs and other sworn peace officer personnel to handle the usual and recurring situations with which they must deal with as sworn peace officers, to wit; defendants COUNTY and DOES 7 through 10, inclusive, failed to train its deputy sheriffs that they have no right to: 1) for using excessive / unreasonable force on persons; 2) for unlawfully seizing persons; 3) for unlawful searching persons; 4) for falsely arresting and falsely imprisoning persons; 5) for fabricating / destroying / concealing / altering evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other deputy sheriffs and supervisory personnel from

COMPLAINT FOR DAMAGES
46

civil, administrative and criminal liability; 6) for interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech; 7) for covering-up unlawful and tortious conduct by San Diego County Sheriff's Department personnel, and were a proximate cause of the very same California state law, and federal and state constitutional violations complained above, and complained of by the plaintiff in this action.

142.   Defendants COUNTY and DOES 7 through 10, inclusive, were deliberately indifferent to the obvious consequences of their failure to train their police officers and other sworn peace officer personnel adequately; and

143.   The failure of defendants COUNTY and DOES 7 through 10, inclusive, to provide adequate training caused the deprivation of plaintiff's rights by the defendants SMITH, COUNTY and DOES 7 through 10, inclusive; that is, the defendants' failure to train is so closely related to the deprivation of plaintiff's rights as to be the moving force that caused the ultimate injury.

144.   As a direct and proximate result of the actions of defendants COUNTY and DOES 7 through 10, inclusive, as complained of herein, plaintiff: 1) was substantially physically, mentally and emotionally injured and endured great physical, mental and emotional suffering; 2) incurred medical and psychological costs, bills and expenses, and 3) incurred other special and general

damages and expenses in an amount to be proven at trial, which is in excess of $5,000,000.00.

### SIXTH CAUSE OF ACTION
### [VIOLATION OF 42 U.S.C. § 1983]
### Claim Against Local Governing Body Defendants Based On
### Official Policy, Practice, Or Custom
### (Against Defendants COUNTY and DOES 1 through 10, inclusive)

145.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 144 inclusive, above, as if set forth in full herein.

146.   As shown above, the actions of defendants COUNTY, SMITH, DORAN and CALDERON and DOES 1 through 10, inclusive, deprived the plaintiff of his particular rights under the United States Constitution and under the California Constitution, as described above and below.

147.   At all times complained of herein, defendants SMITH, DORAN, CALDERON and DOES 1 through 10, inclusive, were acting pursuant to the policies, customs, usages and practices of the San Diego County Sheriff's Department / defendant COUNTY:  1) for using excessive / unreasonable force on persons; 2) for unlawfully seizing persons; 3) for unlawful searching persons; 4) for falsely arresting and falsely imprisoning persons; 5) for fabricating / destroying / concealing / altering evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and

COMPLAINT FOR DAMAGES

maliciously, oppressively convict innocent persons, to protect them and other deputy sheriffs and supervisory personnel from civil, administrative and criminal liability; 6) for interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech; 7) for covering-up unlawful and tortious conduct by San Diego County Sheriff's Department personnel, and were a proximate cause of the very same California state law, and federal and state constitutional violations complained above, and complained of by the plaintiff in this action.

148.   Said actions of said defendants were done by them under the color of state law.

149.   As a proximate result of said defendants acting pursuant to said policies, customs, usages and practices of defendants COUNTY and DOES 7 through 10, inclusive, above-described, said defendants committed said actions complained of above.

150.   As a direct and proximate result of the actions of defendants COUNTY and DOES 7 through 10, inclusive, as complained of herein, plaintiffs: 1) were substantially physically, mentally and emotionally injured, and great physical, mental and emotional pain, suffering and distress; 2) incurred medical and psychological costs, bills and expenses, 3) incurred lost profits and wages,

and 4) incurred other special and general damages and expenses in an amount to be proven at trial, which is in excess of $5,000,000.00.

**SEVENTH CAUSE OF ACTION**
**Violation of Cal. Civil Code § 52.1**
**Under California State Law**
**(Against all Defendants)**

151.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 150, inclusive, above, as if set forth in full herein.

152.   As shown above, defendant SMITH assaulted and battered plaintiff ROBERT PITT numerous times as retaliation for verbally protesting at being falsely arrested and thrown into jail, and for having his CHP-issued service weapon taken from him without plaintiff's consent, nor a warrant nor probable cause, nor even a reasonable suspicion of criminality afoot of plaintiff.

153.   Said actual use and threats of violence against plaintiff ROBERT PITT by said defendant SMITH in order to coerce the plaintiff to refrain / stop the exercise of his constitutional right not to be assaulted, battered or handcuffed excessively causing permanent physical injury constituted the threatened and actual use of violence against plaintiff ROBERT PITT in order to deter and prevent him from exercising his constitutional rights.

154.   The actions of defendant deputy sheriff SMITH and DOES 1 through

10, inclusive, above-described, were done in retaliation for plaintiff's exercise of his First Amendment rights to freedom of speech and to petition the government for redress of grievances, and to chill, deter and prevent further verbal protests and complaints by plaintiff to said defendant deputy sheriff SMITH about his mistreatment of the plaintiff.

155.   Moreover, as shown above, said defendant deputy sheriff SMITH used unreasonable force upon the plaintiff JONES; said use of unreasonable force in itself being a violation of Section 52.1.

156.   Said defendant deputy sheriff SMITH and DOES 1 through 10, inclusive, interfered with, and/or attempted to interfere with, by use of threats, intimidation, and coercion, the exercise or enjoyment by plaintiff of the rights secured by the Constitution and laws of the United States, and of the rights secured by the California Constitution and otherwise by California law, in violation of California Civil Code § 52.1.

157.   Said defendant JOHNSON and DOES 1 through 10 are liable to plaintiffs for said violations of their constitutional rights, pursuant to California Civil Code §52.1, and California Government Code §§815.2(a), 815.6, 820, 820.8.

158.   As a direct and proximate result of the actions of said defendants, plaintiff ROBERT PITT was: 1) substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and

COMPLAINT FOR DAMAGES

expenses and 3) incurred other special and general damages, including attorney's fees, bail costs and other associated costs and expenses, and 4) incurred lost profits; all in an amount to be proven at trial which is in excess of $5,000,000.00.

159.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant COUNTY, in an amount to be proven at trial in excess of $5,000,000.00.

160.   In addition, as a result of the actions of said defendants in violation of the plaintiffs' rights under Cal. Civil Code § 52.1, the plaintiffs are entitled to an award of treble compensatory damages against all defendants, and each of them in this action.

## EIGHTH CAUSE OF ACTION
### False Arrest / False Imprisonment
### Under California State Law
### (By Plaintiff Against all Defendants)

161.   Plaintiff hereby re-alleges and re-incorporates by reference the allegations set forth in paragraphs 1 through 160, inclusive, above, as if set forth in full herein.

162.   As complained of above, plaintiff ROBERT PITT was unlawfully seized and arrested by SMITH and DOES 1 through 10, inclusive, on January 21, 2015.

163.   As complained of above, said defendants SMITH and DOES 1 through 10, inclusve had: (1) neither a warrant nor probable cause to believe that plaintiff ROBERT SMITH had committed a crime, nor reasonable suspicion of criminality afoot about plaintiff ROBERT PITT; (2) Plaintiff was actually harmed by said conduct of SMITH and DOES 1 through 10, inclusive; and (3) the conduct of SMITH and DOES 1 through 10, inclusive, was substantial factor in causing plaintiff ROBERT SMITH harm.

164.   Defendants SMITH, COUNTY and DOES 1 through 10, inclusive, are liable to plaintiff ROBERT PITT for their false arrests / false imprisonments pursuant to Cal. Gov't Code §§ 815.2(a), 815.6, 820, 820.4 and 820.8.

165.   As a direct and proximate result of the actions of SMITH and DOES 1 through 10, plaintiff ROBERT PITT was: 1) substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses; 3) incurred other special and general damages, including attorney's fees, and; 4) incurred loss of wages and other associated costs and expenses; all in an amount to be proven at trial in excess of $5,000,000.00.

COMPLAINT FOR DAMAGES

166.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant COUNTY, in an amount to be proven at trial in excess of $5,000,000.00.

## NINTH CAUSE OF ACTION
### Battery
### Under California State Law
### (Against all Defendants)

167.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 166, inclusive, above, as if set forth in full herein.

168.   The actions committed by SMITH and DOES 1 through 10, inclusive, above-described, constituted unjustified non-consensual use of unlawful force and violence upon plaintiff ROBERT PITT and constituted a battery of him by defendant SMITH and DOES 1 through 10, inclusive, under California state law.

169.   SMITH and DOES 1 through 10, and each of them, are liable to plaintiff for said batteries of him, pursuant to Cal. Government Code §§ 815.2(a), 815.6, 820, 820.8 and otherwise pursuant to the common-law.

COMPLAINT FOR DAMAGES

170.   As a direct and proximate result of the actions of SMITH and DOES 1 through 10, inclusive, plaintiff ROBERT PITT was: 1) substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses and 3) incurred other special and general damages, including attorney's fees, bail costs and 4) incurred lost profits and other associated costs and expenses; all in an amount to be proven at trial in excess of $5,000,000.00.

171.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant COUNTY, in an amount to be proven at trial in excess of $5,000,000.00.

### TENTH CAUSE OF ACTION
#### Assault
#### Under California State Law
#### (Against all Defendants)

172.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 171, inclusive, above, as if set forth in full herein.

173.   The actions committed by SMITH and DOES 1 through 10, inclusive, above-described, constituted an assault of plaintiff ROBERT PITT under California state law, as said plaintiff was unlawfully placed in reasonable

fear of receiving an imminent violent injury by defendant SMITH and DOES 1 through 10, inclusive.

174.   Defendant SMITH and DOES 1 through 10, inclusive, and each of them, are liable to plaintiff ROBERT PITT under California state law for said assaults of him, pursuant to Cal. Government Code §§ 815.2(a), 815.6, 820 and 820.8, pursuant to the California Constitution, and otherwise pursuant to the common law.

175.   As a direct and proximate result of the actions of SMITH and DOES 1 through 10, inclusive, plaintiff was: 1) substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses and 3) incurred other special and general damages, including attorney's fees, bail costs and other associated costs and expenses, 4) incurred lost profits and other associated costs and expenses; all in an amount to be proven at trial in excess of $5,000,000.00.

176.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant COUNTY, in an amount to be proven at trial in excess of $5,000,000.00.

/ / /

COMPLAINT FOR DAMAGES

56

## ELEVENTH CAUSE OF ACTION
### Conversion
### Under California State Law
### (Against All Defendants)

177.   Plaintiff hereby re-alleges and re-incorporates by reference the allegations set forth in paragraphs 1 through 176, inclusive, above, as if set forth in full herein.

178.   As described above, plaintiff ROBERT PITT owned, possessed and had a right to possess his said personalty / property, a Sig Sauer pistol and the fanny pack where it was contained therein.

179.   Defendants SMITH, DORAN, CALDERON, COUNTY and DOES 1 through 10, inclusive, intentionally and substantially interfered with plaintiff's property by taking plaintiff's fanny pack and Sig Sauer pistol, impounded said firearm for four months, required plaintiff to pay sums of money and complete Department of Justice applications to retrieve his lawfully issued California Highway Patrol service weapon, took possession of said property, denied plaintiff access to said property, and refused to return said property after plaintiff had demanded its return from defendants for approximately four months.

180.   Plaintiff did not consent to the taking of his property and was harmed by such taking of his property.

COMPLAINT FOR DAMAGES

57

181.   The conduct of defendants SMITH, DORAN, CALDERON, COUNTY and DOES 1 through 10, inclusive, above-described, was a substantial factor in causing plaintiff's harm and constituted an unlawful conversion of plaintiff's property, under California state law.

182.   Defendants SMITH, DORAN, CALDERON, COUNTY and DOES 1 through 10, and each of them, are liable to ROBERT PITT for said unlawful conversion of plaintiff's property, pursuant to Cal. Government Code §§ 815.2(a), 815.6, 820, 820.8 and otherwise pursuant to the common-law.

183.   As a direct and proximate result of the actions of defendants SMITH, DORAN, CALDERON, COUNTY and DOES 1 through 10, inclusive's unlawful and unreasonable seizure of the property of ROBERT PITT: 1) was substantially injured; 2) incurred costs, bills and expenses; 3) incurred attorney's fees and associated litigation and other related costs, and 4) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $5,000,000.00.

**<u>TWELFTH CAUSE OF ACTION</u>**
**<u>Intentional Infliction Of Emotional Distress</u>**
**Under California State Law**
**(Against all Defendants)**

COMPLAINT FOR DAMAGES

184.   Plaintiff hereby re-alleges and re-incorporates by reference the allegations set forth in paragraphs 1 through 183, inclusive, above, as if set forth in full herein.

185.   Defendants SMITH, DORAN, CALDERON, COUNTY and DOES 1 through 10, inclusive, and each of them, knew and/or should have known that plaintiff was susceptible to suffering severe emotional distress from the actions taken and committed against plaintiff as complained of above and herein.

186.   Moreover, the conduct of said defendants, for all of the incidents complained of herein, were outrageous and not the type of conduct condoned in a civilized society.

187.   As a direct and proximate result of the actions of said defendants SMITH, DORAN, CALDERON, COUNTY and DOES 1 through 10, plaintiff ROBERT PITT was: 1) substantially physically, and severely mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses and 3) incurred other special and general damages, including attorney's fees, and other associated costs and expenses; 4) incurred lost wages and other associated costs and expenses; all in an amount to be proven at trial in excess of $5,000,000.00.

188.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of

COMPLAINT FOR DAMAGES

punitive / exemplary damages against all defendants and each of them, save

defendant COUNTY, in an amount to be proven at trial in excess of

$5,000,000.00.

**WHEREFORE**, plaintiff prays for judgment as follows:

a)     For a judgment against all defendants for compensatory damages in

an amount in excess of $10,000,000.00; trebled to $30,000,000.00[1];

b)     For a judgment against all defendants, save defendant COUNTY for

punitive damages in an amount in excess of $10,000,000.00;

c)     For an award of reasonable attorney's fees and costs;

d)     For a trial by jury; and

e)     For such other and further relief as this honorable court deems just

and equitable.

_____
JERRY L. STEERING

_____

[1] Pursuant to plaintiff's Section 52.1 claim.

COMPLAINT FOR DAMAGES

60